UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                :
WAYLAND HYDE,                   :  CASE NO. 5:06-cv-02161
                                                :
            Plaintiff,               :
                                                :
vs.                                           :
                                                :  [Resolving Doc. No. 6]
STERLING JEWELERS INC.,    :
                                                :
            Defendant.            :
                                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Plaintiff, Wayland Hyde, originally brought suit in the Summit County, Ohio Court of Common Pleas, alleging violations of the Family Medical Leave Act and intentional infliction of emotional distress. [Doc. 1.] The case was subsequently removed to this Court on September 7, 2006, pursuant to 28 U.S.C. § 1441(a). *Id.* On September 19, 2006, the Defendant then filed the current motion seeking to stay all proceedings in this court because the Plaintiff's claims are subject to mandatory dispute resolution. [Doc. 6.] For the reasons discussed below, the Court **GRANTS** the Defendant's motion.

I. Background

In November 1987, Plaintiff Hyde began employment with the Defendant as a jeweler. During the course of the Plaintiff's employment, the Defendant instituted a mandatory dispute resolution program called RESOLVE. [Docs. 6,7.] Pursuant to the terms of this program, that became effective for all employees on June 1, 1998, all disputes alleging unlawful behavior between

Case No. 5:06-CV-2161
Gwin, J.

the Defendant and its employees are subject to a mandatory three-step dispute resolution process. *Id.* Specifically, the procedure consists of one level of internal review, followed by outside mediation or review by a five-member Review Panel and finally binding arbitration. *Id.* With respect to the program's arbitration phase, the program explicitly states that "[a]rbitration is the final step. Neither party may file a lawsuit instead of using the RESOLVE program or accepting the Arbitrator's final decision." [Doc. 6, Exhibit A.]

Upon adopting the RESOLVE program in 1998, the Defendant publicized the program by distributing written materials to its Regional Repair Managers. [Doc. 6.] The Plaintiff became a Regional Repair Manager in 1993, and therefore had " primary responsibility for publicizing RESOLVE to all district managers, store managers and employees under his charge." *Id.* After the Defendant adopted the RESOLVE program, the Plaintiff continued to work for the Defendant for more than eight years. *Id.* The Plaintiff did not, however, sign any form expressing his agreement to be bound by the terms of the RESOLVE program. *Id.* On or about June 2, 2006, the Plaintiff did file a RESOLVE claim and has subsequently appealed the initial determination made under the program. *Id.* He subsequently abjured the RESOLVE program and brought this action.

II. Discussion

Because this case concerns an agreement to arbitrate, the Federal Arbitration Act governs the case. 9 U.S.C. § 1, *et seq.* Agreements to arbitrate employment disputes are generally enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* The Federal Arbitration Act embodies "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). The Act seeks to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter*, 470 U.S. at 219; *Ferro Corp. v. Garrison*

Case No. 5:06-CV-2161
Gwin, J.

*Indus., Inc.,* 142 F.3d 926, 932 (6th Cir. 1998). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218.

In deciding whether to order arbitration, courts consider four principle issues: (1) whether the parties agreed to arbitrate the dispute; (2) the scope of the arbitration agreement; (3) if federal claims are asserted, whether Congress intended arbitration to govern the claims, and (4) if only some claims are arbitrable, whether to stay the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Applying these standards here, the only contested issue is whether the parties agreed to arbitrate their disputes. Ultimately, the Court concludes that the parties did agree to arbitration.

In his opposition to the Defendant's motion to stay court proceedings pending arbitration, the Plaintiff Hyde says that the parties did not agree to submit this dispute to arbitration. [Doc. 7.] Specifically, the Plaintiff argues that his refusal to sign any form expressing his agreement to be bound by the terms of the RESOLVE program is dispositive because "absent a signature, Hyde is not bound or barred from filing suit." *Id.* In support of this proposition, the Plaintiff notes that other employees explicitly agreed to be bound by the RESOLVE program by executing "RESOLVE Program Alternative Dispute Resolution Arbitration Agreement forms," but that he refused to execute such an agreement. *Id.* Additionally, the Plaintiff notes that in prior cases addressing the Defendant's RESOLVE program, the Defendant itself has argued that an employee's execution of an explicit arbitration agreement form is conclusive evidence that the parties agreed to arbitration. *Id.* Significantly, however, the Plaintiff is unable to cite any case law supporting his argument that

-3-

Case No. 5:06-CV-2161
Gwin, J.

execution of a document explicitly agreeing to be bound by arbitration is required in order for an employee to be bound by the terms of a dispute resolution program such as RESOLVE.

Under Ohio law, a contract exists where there is (1) mutual assent, (2) an offer and acceptance of the offer, and (3) consideration. *See, e.g., Nilavar v. Osborn*, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998). In this case, the Defendant clearly extended an offer to all of its employees through its promotion of the RESOLVE program. Accordingly, the question is whether the Plaintiff evidenced his intent to accept that offer. Clearly, resolution of this issue would be simple if the Plaintiff had in fact signed a form stipulating his agreement to be bound by the RESOLVE program's terms. However, the Court does not find the fact that the Plaintiff's failed to execute such a form dispositive.

Here, the Plaintiff continued to work for the Defendant for more than eight years after the Defendant adopted the RESOLVE program. [Docs. 6, 7.] In light of the fact that the Plaintiff himself was responsible for promoting the adoption of the RESOLVE program, and was therefore intimately familiar with its terms, such continued employment clearly seems an implicit acceptance of the Defendant's offer. Indeed, in a remarkably similar situation the Northern District of Ohio found, in *Dantz v. Apple Am. Group, LLC*, that under Ohio law an employee manifested her assent to an arbitration agreement through her continued employment with the employer after the adoption of the arbitration program. 277 F.Supp.2d 794, 800-801 (N.D. Ohio 2003). Moreover, in the instant case the Plaintiff has already participated in the RESOLVE program by voluntarily submitting his claims for review. Accordingly, the Court finds that sufficient evidence exists to establish that the Plaintiff did intend accept the Defendant's offer and is in fact bound by the terms of the RESOLVE program.

-5-

Case No. 5:06-CV-2161
Gwin, J.

### III. Conclusion

As described above, the Court finds that the parties did agree to arbitrate the dispute at issue in this case. Accordingly, the Court **GRANTS** the Defendant's motion to stay all proceedings pending arbitration.

IT IS SO ORDERED.

Dated: November 8, 2006  s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE